**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ilene Modica, | No. CV11-02183-PHX DGC |
| Plaintiff, | **ORDER** |
| v. | |
| American Suzuki Financial Services Company, | |
| Defendant. | |

Defendant American Suzuki Financial Services Company ("ASFS") filed a motion for summary judgment on its counterclaim for breach of contract and Plaintiff's claims under the federal Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), and Arizona Consumer Reporting Agencies and Fair Credit Reporting Act, A.R.S. § 44-1694 and § 44-1695. Doc. 69. Plaintiff Ilene Modica filed a response on December 17, 2012 (Doc. 78), and ASFS filed a reply on January 7, 2013 (Doc. 85). For the reasons that follow, the Court will grant Defendant's motion in part and deny it in part.[1]

**I.  Background.**

On December 8, 2005, Plaintiff and her daughter Jacklyn Modica executed an agreement for a lease of a Suzuki Grand Vitara with ASFS. Doc. 75 ¶¶ 2, 6. The lease named Plaintiff and her daughter as co-lessees for a 30-month term, and ASFS as the assignee. Doc. 75 ¶ 6. The lease was scheduled to end on June 8, 2008, and the lease

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b)

document contained this provision:

> **29. LEASE END DAILY EXTENSION.** At scheduled lease end, if you keep the vehicle and do not buy it, you elect to extend the lease and pay a daily extension charge beginning on the eighth day after the scheduled lease end date. The Charge is shown on the front [of the form]. We may limit the number of days you extend the lease. During the daily extension period, you agree to comply with the terms of this lease, other than terms that apply to monthly payments and early end. The total allowed mileage will not increase.

Doc. 75 ¶ 8.

The car was not returned to ASFS on the lease end date of June 8, 2008, but Plaintiff's daughter had negotiated a lease extension with ASFS before that date. Doc. 70 ¶ 12; *see* Doc. 75-2. The new maturity date was advanced several times, first until July 8, 2008, then until August 8, 2008 (an extension for which two forms are attached), and finally until September 8, 2008. Doc. 75-2 at 2-5. The lease extension agreements state that they are available "only to the original lessee(s)" and that "[n]one of the terms or conditions of [the] existing lease, including but not limited to the payment amount or residual value, are modified by granting this extension." Doc. 75-2 at 2-5. Plaintiff claims that she did not know about or authorize the lease extension agreements and her signature does not appear on them. Doc. 75 ¶ 30; Doc. 75-2 at 2-5. Plaintiff also claims that the lease was extended beyond the dates listed on the extension forms until January 2009, six months beyond the original end date, and that her daughter made all of scheduled payments during the six-month extension. Doc. 75 ¶¶ 31-32. Plaintiff maintains that her daughter returned the vehicle to a Suzuki dealership on January 8, 2009, the end of the six-month extension period. Doc. 75 ¶ 38.

ASFS argues that it only extended the lease until September 8, 2008, and that Plaintiff and her daughter kept the car outside the terms of the lease and its extensions from that date until January 8, 2009. It claims that Plaintiff was in breach of contract during that time period and moves for summary judgment on that claim.

Following the return of the vehicle, ASFS reported the incident to credit reporting

1 agencies as a "current and paid/paying as agreed." Doc. 75 ¶ 52. Plaintiff disputed the charge with the credit agencies several times, and each time the credit reporting agencies contacted ASFS to notify them of the dispute and confirm the charge. Doc. 75 ¶¶ 51-61. Eventually, ASFS changed the report to an unpaid balance with a loss (a "charge-off"). Doc. 75 ¶ 57. Plaintiff alleges that Defendants did not complete their duty to fully investigate the charges in violation of the federal and state Fair Credit Reporting Acts, 15 U.S.C. § 1681s-2(b) and A.R.S. § 44-1694 and § 44-1695. Doc. 46 at 9-12. Defendant moves for summary judgment on those claims because they maintain that their charges were investigated and correct. Doc. 69 at 7-9.

## II.     Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Ninth Circuit has held that there is no genuine issue "where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F. 3d 1054, 1061 (9th Cir. 2002) (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)).

**III. Analysis.**

**A. Breach of Contract.**

ASFS moves for summary judgment on its counterclaim for breach of contract. It maintains that Plaintiff breached her lease agreement by failing to return the vehicle on the date the last documented extension expired, September 8, 2008.

Plaintiff acknowledges that the car was not returned until January 8, 2009 (Doc. 75 ¶ 38), but argues that the return date did not breach the lease agreement for three reasons. First, she argues that the lease was extended through January 2009 and that all of the payments were made through that date. Second, she argues that the terms of the original lease were fulfilled because all of the payments were made and she was not a party to any of the lease extensions executed by her daughter. Finally, she argues that ASFS waived its contractual rights when it mailed Plaintiff a letter in January 2009 informing her that the lease had been terminated and that she did not have an outstanding balance with ASFS.

Plaintiff attached the extension agreements to her statement of facts as Exhibit B. Doc. 75-2. Those extensions show that the lease was extended through September 8, 2008. Doc. 75-2 at 5. With respect to the period from September 2008 to January 2009, Plaintiff offers the deposition of her daughter Jacklyn. Doc. 75-4. During the deposition, Jacklyn was asked: "Is it your recollection, Jackie, that you signed six lease extension forms?" She responded: "I believe so." Doc. 75-4 at 7. The questioner continued: "Do you remember the fourth one you signed?" Jacklyn responded: "I remember that, you know, that there were at least four – that there were four, five, six. I don't remember specifically what the fourth one – if there were any issues in receiving the fax or who I had talked to." Doc. 75-4 at 7. Jacklyn also stated that she believed she made all the payments during the extension period, and when asked if the same checking account was used for all payments, she responded: "It should be through that account. I know throughout the lease there were a couple times where my then boyfriend/ now husband made a couple payments." Doc. 75-4 at 11-12. Shortly thereafter she reaffirmed that no

one made payments for her during the lease extensions. Doc. 75-4 at 12 ("Q: Did anyone else make payments for you during the lease extensions? A: No, they did not.").

In addition to her daughter's testimony, Plaintiff introduces a letter she received from ASFS dated January 15, 2009. Doc. 75-7 at 24. ASFS sent the letter after it regained possession of the car, and sent an identical letter to Plaintiff's daughter on the same day. Doc. 75-7 at 25. Both letters state that the recipients are in breach of contract, but they also both list "Past due payments" as "$.00." Doc. 75-7 at 24-25. The letter also states that the recipients will be responsible for any balance owing under the lease agreement after the vehicle is sold, but the balance owing appears to be a reference to the itemized list of charges in the letter. *Id.* That list purported to show what the recipients were required to pay "as of the date of [the] letter." *Id.*

In response to Plaintiff's daughter's contention that she made all payments through January, ASFS seeks to introduce the statements from Jacklyn Modica's checking account with Desert Schools Federal Credit Union ("DSFCU"). Doc. 85-1. ASFS contends that the statements are admissible under the residual exception to the hearsay rule, Federal Rule of Evidence 807, because of Jackie's statement at her deposition that no payments were made for her and that all payments came from her checking account. Without deciding whether the statements will be admissible under Rule 807 at trial, the Court notes that they are consistent with the itemized list of payments received by ASFS during the lease period – both records show 33 payments. Doc. 70-1; Doc. 85-1. The payment information is also consistent with ASFS's contention that the lease was only renewed through September 8, 2008, and that no payment was received after September despite the fact that the car was not returned until January.

While Plaintiff's daughter's statement might be construed as self-serving, it is corroborated by the letter ASFS sent to both Plaintiff and her daughter. *Villiarimo*, 281 F. 3d at 1061. The Court concludes this evidence, when contrasted with evidence ASFS seeks to introduce to undermine Plaintiff's daughter's testimony, presents a genuine issue

of material fact that precludes summary judgment.

### B. Fair Credit Reporting Act.

ASFS also moves for summary judgment on Plaintiff's claims under the Fair Credit Reporting Act ("FCRA"). 15 U.S.C. 1681s-2(b). The FCRA requires entities that furnish information to credit reporting agencies to investigate disputed charges upon notice of the dispute. The investigation must be reasonable. *Gorman v. Wolpoff & Abramson, LLP*, 584 F. 3d 1147, 1157 (9th Cir. 2009). Furthermore, the requirement to investigate consumer disputes is "procedural," meaning that no particular outcome necessarily makes the investigation unreasonable even if that outcome turns out to be inaccurate. *Id.* at 1161.

Plaintiff contends that ASFS did not engage in a reasonable investigation. She proffers the deposition of Kathleen Perry in which Ms. Perry states on behalf of ASFS that she did not know what steps ASFS took to investigate the disputed items on Plaintiff's credit report. Doc. 75-6 at 12-14. The same deposition acknowledges ASFS' receipt of Plaintiff's complaints from the credit reporting agency and raises questions regarding the change in the account's status from "closed" to "charged off." *Id*. at 16-22. As noted above, Plaintiff has also introduced a letter sent to Plaintiff that said she had "$.00" in past due payments. Doc. 75-7 at 24. ASFS does not show how their investigation explained that letter, and, when asked about the letter in a deposition, Matthew Dickey, on behalf of ASFS, stated that he agreed with the questioner that the form indicates that the past due payments are $0. Doc. 75-5 at 19.

Defendant moves for summary judgment on this claim because it engaged in an investigation and the item on Plaintiff's credit report was correct. Under the statute Defendant had a duty to reasonably investigate the disputed charge even if it happened to be correct.[2] Here, ASFS does nothing to show that its investigation was reasonable. Ms.

---

[2] The accuracy of the charge may be relevant to Plaintiff's ability to show actual damages, but 15 U.S.C. § 1681n contemplates statutory damages against those who "willfully fail to comply with any requirement imposed under this subchapter." Furthermore, as the contract claim is still in dispute, ASFS has not yet established that the charge was correct.

1 Perry went so far as to say she did not know what the investigation entailed. Without
2 more, the Court cannot conclude the investigation was reasonable. Accordingly, the
3 Court will deny ASFS' motion for summary judgment on the FCRA claim.

      **C.**     **Arizona Consumer Reporting Agencies and Fair Credit Reporting Act.**

Count two of the complaint alleges violations of A.R.S. § 44-1694 and § 44-1695. A.R.S. § 44-1694 applies to credit reporting agencies and the credit reporting agencies named in the initial complaint are no longer part of this litigation. Doc. 51, 74. As written, A.R.S. § 44-1695 would impose additional duties on ASFS, but in *Loomis v. U.S. Bank Home Mortg.*, No. CV-11-00735-TUC-CKJ, 2012 WL 6200635 (D. Ariz. Dec. 12, 2012), the district court found that A.R.S. § 44-1695 related to "the responsibilities of persons who furnish information to consumer reporting agencies" and was expressly preempted. *See* 15 U.S.C. § 1681t(b)(1)(F). The Court agrees with that analysis. Because A.R.S. § 44-1695 is preempted, the Court will grant summary judgment with respect to this claim.

**IT IS ORDERED** that Defendant's motion for summary judgment (Doc. 69) is **granted in part and denied in part.** Summary judgment is granted with respect to the state law claim in count two, but denied with respect to the federal claim in count one and Defendant's breach of contract counterclaim. The Court will set a final pretrial conference by separate order.

Dated this 22nd day of February, 2013.

                                              *David G. Campbell*
                                            David G. Campbell
                                            United States District Judge